Good morning. My name is William Kent, and I'm representing Mr. Dolan. May it please the Court. The main issue is dual representation by the County Council's Office in a assessment appeals case. In that case, I was representing the taxpayer, and the County Council, James Harmon, was representing the tax assessor. Now, at that time, I did not know that there was a lady named Paula Whaley, who was also from the County Council's Office, sitting there. I did not know. They didn't announce it. And so, anyway, it was a, one of these vociferous hearings and so forth and so on. And then I found out facts that is bringing me here. Paula Whaley was hired by the Assessment and Appeal Board's three judges to come there and perform certain functions. Now, the Board had given her, before the hearing, the briefs, my brief and Mr. Harmon's brief. And she was also asked to do her own research. So she did her research, and she came and she sat at the hearing, and then she was taking notes. Now, after the hearing, she went in with the three Board members, and we don't know what, exactly what was said. But we do know that she asked questions, she gave advice, she was there to help the Board, and the Board asked her questions and so forth. Unfortunately, the lower court, the Supreme Court, did not allow us to take any depositions of the Board members. And so, we don't know too much of what was actually said. But what we know is that after she had this discussion, she then took the tape of the trial, or the hearing, she took the exhibits and she took the file, and she went on her own, and then made up findings of fact and conclusions of law. And then she sent that out to the Board, the Board signed it, and that was that. Now, my contention here is that I was the, my client was denied due process by having a party who was a member of the law firm, being a member of the law firm. And I was shocked. And, again, I had no knowledge beforehand about this. Would have complained. I don't know if that would have gotten me anywhere. My understanding is that that is permitted by a California statute, that the county It's a very funny thing about that statute. 41 years ago, California said that the Board can, doesn't have to, wasn't forced to, they can hire somebody to help them. And they cannot hire a private law firm where one of the members of the law firm is representing a party, and then hire them to help the Board. They can't do that with a private law firm. But somehow, ironically, and not understandably to me, they said, it's okay, though, to hire dual representation from county counsel. So if a law firm is no good, and a county counsel, in my opinion, and the opinion I've seen of all the other, in the decisions, is a law firm, if that's no good, why is it good for county counsel to be there assisting the Board? So that statute goes back 41 years, and perhaps at that time, they didn't realize how deficient that procedure was. So they authorized it, and I'm here to say that I believe that's a violation of due process, our due process, to have two members of the county counsel's office actually, one trying the case and the other one writing up the decision. But there's a little more to this case, right? Mr. Kent, there's the ethical wall. And in fact, the judge held a hearing in which both lawyers testified. I'm not sure if you were there, but if you were, the lawyer had an opportunity to cross-examine, and he made specific factual findings that this ethical wall provides that protection. Well, this ethical wall doesn't exist in Federal law. I mean, I've read every case there is. It's possible, as you can tell from my work. And the thing is, that is a fallacy. In this particular case, Paula Whaley, after she wrote the decision, she then destroyed her notes. So as far as her file is concerned, her file doesn't contain anything. And we're not the fact that what's wrong here is that she was a member of the law firm. It has nothing to do with an ethical wall. That's a fiction or a mythical imagination. And as a matter of fact, there was one case that I found, a grand case, that had in Chicago, the law firm that was representing the city wanted to have a lawyer try the case for the city for some kind of traffic violation and have another lawyer in the office sit as a decision maker. And a Federal District Court judge says that that cannot be. See, what the problem here is, is a connection between the law firm, the county counsel's office, with the lady writing the decision, and with the tax assessor being represented by the same law firm. But she's – I'm sorry. Go ahead. I was just going to ask whether you're challenging any of the District Court's findings of fact that the two attorneys had nothing to do with each other during this period. They didn't talk to each other. They didn't consider this matter together in any way. They were from two different divisions within the county counsel's office. And that the office takes diligent measures to separate those sections. Are you challenging any of that? Well, the – I'm challenging the idea that there's – you can have a father try a case with his son because he says that, you know, I am completely impartial. I mean, this actual – if you look at the actual facts, all this lady said, as Paul O'Reilly was, that she has her file locked up. So what? She has her file locked up and nobody can see her file. That's not what I'm talking about. We're talking about the relationship here. The fact that they're from the same law firm. Now, I've looked at every single case, and there's one case that says – and this is a Camara case in 1967. This was the start of the whole revolution about being careful on who can control excommunications. Ex-party communications is a terrible, insidious type of method of judging a case. All – she was giving ex-party communications to these three judges. That is a no-no. It's – the relationship between the law firm, which is the county counsel's office, and what she was doing, whether she was communicating good stuff, bad stuff, or whatever, is immaterial. It's just that the relationship between two people in the same law firm is a denial of the due process that we need. There was no communication. There's no finding of fact that there was communication between the two attorneys. There's also no legal conclusion that, as counsel to the board, she was engaged in ex-party communications. She was the lawyer. She was providing advice and counsel to the board. So there's no ex-party communications. There's no communications between the two lawyers. There's an ethical wall. And there's all these factual findings following a hearing that the judge made. But you're not challenging any of those. No. The – there was nothing about – the two lawyers knew each other. She was there 10 years. He was there 14 years. But the violation of due process is that they're from the same law firm. And what I'm saying is, for the Camaro case, it says, it is difficult to imagine a more serious incursion in fairness than to permit the representative – this is a representative of the law firm – of one of the parties to privately communicate his recommendations to the decision-makers to allow such activity will be to render the hearing virtually meaningless. And then, in the Ryan case, a hearing is not fair where one party has private access to the decision-maker and can present evidence or argument that other parties have no opportunity to rebut. So what we're talking about is, really, they're in the same law firm. She's communicating her research or whatever it was, her ideas. We don't know that. The lower court prevented us from getting that information. They granted a protective order. So what I'm saying is that there is a violation of due process when you have two people from the same law firm, one advising the board and writing the decision, doing the research. She did everything. I don't even think the board members did anything. And having a lawyer, an attorney, represent the other party, it's not fair. Would you agree, though, Mr. Kent, that there's nothing in this record that shows that she communicated with the other attorney? I'll admit that she did not talk to the other attorney. Okay. What I'm complaining about is she talked to the decision-makers. That's what I'm complaining about. She talked to them. We don't know what she said. The lower court wouldn't allow us to get that information. But she is not a judge. And she has no right to be talking privately without telling us. We had no opportunity. Look at the Morgan case. The Morgan case, which 1937 stands for the right to a hearing in an administrative context. In that case, the Supreme Court also had another question. There were parts of the prosecutor who were preparing drafts for the Secretary of Agriculture to sign. Supreme Court said, no, no. They can't do that. She's preparing the decision. Secretary of Agriculture can't do that. That's not permissible. Now, what I'm complaining about is she was communicating to the board where I did not have any opportunity Excuse me. My voice is parched. I don't know what it is. I'm nervous. I did not have any opportunity to rebut. I'm really sorry. I apologize. As you get older, I get. So all I can say is that whether the fact that they didn't talk to each other, that's not why I'm here. I'm here because on the surface, there's such a thing as the appearance of justice. That is your problem. Your argument is a procedural due process right to the appearance of justice. And in the Coppertone case, they said, listen, we can't tell what's in anybody's mind. It's all objective. We don't want to. In that case, as you know, the West Virginia justice said, look, I can be fair. That wasn't the issue. The issue was that they had received some money. Incidentally, the county council gets three fourths of the money that's put up. And therefore, there's a financial interest that they have. They get three fourths of the money that all these people put up when they take the appeal. Now, if they were to be finding for taxpayers and so forth, they may not have a job. Future employment is something that I think also tarnishes their ability. So if you take the law clerk situation, and there are lots of cases on law clerks. It says if a law clerk has a promise of employment, cannot sit on the case, the whole case and so forth. The law clerk that has a promise of employment cannot participate. So what the law is trying to do is to have the nice, clear, delicate balance that they talk about. It has to be almost like Caesar's wife, beyond suspicion. You have a person that's from the law firm, goes in, does all the research, this and that. And you know, a lot of stuff that law clerks or other helpers do, they can be this feeding things that could be an outcome determination. And therefore, I, my honest to God thing, and I don't know how much longer I got to live, but as I have my last breath, you have to have a system, a judiciary, where there's no possible semblance of somebody who's not the judge influencing the decision. It's not fair. I, so I'm just going to save a few minutes, but. Can I save a minute or two? You're over, but depending on what we'll see, if there's something, if you listen to the argument and then if you feel there's something you really need to say. Good morning, Your Honors. William Hallock on behalf of the Assessment Appeals Board, number three of the County of Orange. If it pleases the Court, I will be brief. Government Code, California Government Code 31,000.7 sets forth the procedure, sets forth the authority for the County Counsel's Office to play both roles in this dual representation situation. We brought a motion for summary judgment in front of Judge Carter, and he was, as he said at the trial, he was that close, and he held his fingers very close to each other, degrading the whole thing. But the one issue that he wanted to hear from the County Counsel's Office was whether or not that ethical wall was constructed and whether it was followed. And there was abundant testimony at the trial, and Mr. Kent was present. He had the opportunity to cross-examine Paula Whaley. He had the opportunity to cross-examine James Harmon, and he had the opportunity to cross-examine Pat Martinez, who was the clerk of the board. Without discovery, though? Without discovery. Discovery based, and the reason that the discovery was blocked was because of the deliberative privilege in the attorney-client. Can you answer Mr. Kent's question as to why this section allows County Counsel but doesn't allow the same law firm to do what County Counsel did? Because County Counsel is, in every respect, a law firm. It is a law firm, but because of the myriad of administrative law proceedings, the case law that has been faced with this issue, whether it be in the federal front, in the Withrow case, or in the state front, in the Howitt case, and the Morongo Band of Mission Indians case, they all acknowledge the fact that a separate situation arises when a public law firm is called upon to play a couple roles. And even the assessment appeals manual put out by the State Board of Equalization addresses that issue and says that the county legal advisor is County Counsel, and the county legal advisor has the responsibility of advising the appeals board and clerk of the board in legal and procedural matters. Why not just hire a private law firm, though? Why not avoid this headache coming up each time by having a law firm represent the board and let County Counsel represent the county? Well, that's certainly a choice that the counties can make, but if you read the paper, in every respect, the county doesn't have a lot of money to provide the services that they're asked to provide. They are a regional service provider, and they can't provide the services that they're asked to provide now. So constitutional due process depends on money now. Is that your argument? According to the California Supreme Court, it doesn't. Right. But the California Supreme Court says you have to, they say we don't take such a pessimistic view in the Morongo Band of Indians case. And they say you have this presumption of honesty, integrity, and propriety in the administrative function. And that the burden, once the county counsel or the attorneys involved in that administrative function show that the ethical wall is constructed and followed, the burden shifts to the other side to prove that it wasn't and or that there was actual bias. How do they ever prove that since there never will be discovery because it's always going to be part of the deliberative process or? Oh, no, there's plenty of discovery, Your Honor. There's all the discovery that Mr. Count wanted to take except for the conversations which there's no exception. There's no way around the attorney-client privilege. There's no way around the deliberative privilege. There was enough evidence in this case for Judge Carter to make a specific finding that Whaley was not the decision maker, was never asked to participate in the decision making process, did not analyze the facts for the board. She merely drafted the decision reached by the board. So it wasn't that no discovery was allowed. There was one very small finite area that was precluded as a result of the privileges that, as we all know, are sank or sank. Judge Carter concludes as a matter of law, in his ten conclusions of law, that the statute wasn't unconstitutional on its face because the dual representation it permits does not necessarily call into question the decision maker's impartiality. Correct. How? How would it not, if you have two lawyers from the same firm, one serving as prosecutor, in effect, and the other serving as advisor, legal counsel, to the decision maker, how doesn't that call into question someone's impartiality? Well, I think you hit it on the head. The legal advisor to the board, Paula Whaley wasn't there to act as a decision maker. Paula Whaley was there to explain and define the procedural aspects of the hearing and the preparation of the ultimate findings, to answer any questions that the board had, and then to be nothing more than a recorder of what the board decided. She did not participate in the deliberative process, and she testified to that. That is how. But the issue is impartiality. Would you agree with me that it would be better if it was someone other than someone from the same office? I would agree with the Court that it would be better, but it's not required. Okay. This case is even a step back from the Howitt case and the Morongo case, where they didn't find a constitutional rights violation in a situation where the same lawyer was handling the litigation at issue and acted as an advisor to that same board in other matters. In this situation, we clearly had two lawyers, and I can address chapter and verse what we did to create the ethical wall, and those two trains never met. The advisory position and the litigation position, James Harmon was the litigation attorney, Paula Whaley was the advisory attorney. They had nothing to do with each other as other than being part of the same law firm. Mr. Kent also argued that this isn't an issue that's been necessarily addressed by the U.S. Supreme Court. The Morongo, for example, is a California Supreme Court case. Correct. So where in the Federal system has this specific issue, Federal due process under these circumstances, been addressed? I don't believe it has. In fact, Judge Carter said there's no authority for the proposition that the Constitution necessarily prevents the same public law office from providing assistance to the decision maker while representing one of the parties. But the Withrow case acknowledges the presumption, and I think probably established the presumption of integrity and honesty, and the fact that you have to give administrative board some leeway because of all the tasks that they're called upon. Okay. And with that, if there's no other questions, I would merely submit. Thank you. Thank you. Yes, you may. Withrow case is dealing with licenses. A State has to look at licenses, and a commissioner or a board has to take some evidence to see whether a license should be rebarred. Withrow case has nothing to do with this case. What this case is, if you look at hundreds of cases, you might even say thousands, ex parte communication, not allowed. He has not justified. Was there an ex parte communication? Yes. Do we have to know what it was? No. We do not have to know exactly what it was. In fact, it was secret. We weren't allowed to know. The Court prevented us from knowing. They granted their protective order. But ex parte communications gets somebody to come in there and start talking to the board and saying, I researched it. I prepared, you know, a draft. I mean, I would say this. I didn't cite all the cases that there are in the United States. There must be hundreds of them where the opposite party tries to prepare a draft. She was a representative of that office. That's enough, in my opinion, I hope the Court's opinion, to vitiate the procedure. And all we're asking for is to send the case back to district court and let the district court get a new hearing. I just think this is an unfair procedure. Appearance of justice, what is that? That's what the Capitone, the United States Supreme Court, has that case, that expression, over and over and over again. How can the public know what's in a lady's safe? The appearance of justice means what the public, and when you look at the Capitone case, it says, and also ABC rules, ABA rules, it says, reasonable question whether there was partiality or impartiality. You don't have to know exactly. Thank you. All right, thank you, counsel. Jefferson and Co versus the Board of Assessment and Appeals is submitted.
judges: Mendez, Fletcher, Wardlaw